NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0192n.06

Case No. 21-6243

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| EDWARD MUHAMMAD, | ) | **FILED** |
| Plaintiff - Appellant, | ) | Apr 25, 2023 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | |
| DEUTSCHE BANK NATIONAL TRUST | ) | ON APPEAL FROM THE UNITED |
| COMPANY, as Trustee for FFMLT 2007-FFB- | ) | STATES DISTRICT COURT FOR |
| SS, Mortgage Pass-Through Certificates, Series | ) | THE WESTERN DISTRICT OF |
| 2007-FFB-SS; MACKIE WOLF ZIENTZ & | ) | TENNESSEE |
| MANN, P.C., as Substitute Trustee; | ) | |
| SPECIALIZED LOAN SERVICE LLC, | ) | OPINION |
| Defendants - Appellees. | ) | |
| | ) | |
| | ) | |

Before: MOORE, CLAY, and GIBBONS, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge.   Edward Muhammad sued the defendant institutions in Tennessee state court for their roles in wrongfully foreclosing on his property.  After the defendants removed to federal court based on diversity jurisdiction, the parties engaged in discovery and filed cross-motions for summary judgment.  The district court denied Muhammad's motion for summary judgment and granted defendants' motion.  We affirm.

I.

On July 29, 2004, Edward Muhammad acquired two mortgages for his property in Arlington, Tennessee.  The first mortgage, in the amount of $190,738.00, and the second mortgage, in the amount of $47,684.60, were both obtained from First Franklin Financial Corporation ("First Franklin").  The second mortgage is the subject of this suit.  Muhammad executed a Note and

Security Agreement and Deed of Trust as evidence of the mortgage and First Franklin's security interest in the property. The deed was then recorded with the Shelby County Register of Deeds.

Relevant to this appeal, both documents contained instructions about how the bank should send notices and other information to Muhammad. The Deed states:

> Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein[.]

DE 65-4, Deed of Trust, Page ID 549. And the Note states:

> [E]xcept as otherwise required by law, we are authorized to mail any notice or other correspondence to you by first class mail to your last known address indicated on our records; . . . you will provide us with 10 days prior written notice of any change in any information contained in your application including a change in your name or address.

DE 65-3, Note, Page ID 594.

In June 2011, Muhammad ceased making mortgage payments for the property. And in early 2014, Muhammad filed a Chapter 7 bankruptcy proceeding. Around that same time, in February 2014, First Franklin purportedly assigned Muhammad's second mortgage and Note to Deutsche Bank.

Specialized Loan Service LLC ("SLS") acted as the loan servicer and sent a notice of default and notice of intent to foreclose to Muhammad via regular mail to the property address in June 2019. SLS then contracted with debt collection firm Mackie Wolf Zientz & Mann, P.C. ("Mackie Wolf") to collect the indebtedness on Muhammad's mortgage. The firm sent a notice of acceleration of loan maturity to the property address in October 2019, followed by a notice of the property's sale at public auction, both via first-class mail. Muhammad asserts that he never

received any of these notices. In January 2020, Mackie Wolf, as substitute trustee, conducted a foreclosure sale where the property sold to Deutsche Bank, the highest bidder.

On January 30, 2020, Muhammad filed suit in Tennessee state court against Deutsche Bank, SLS, and Mackie Wolf, alleging that each played a role in wrongfully foreclosing on his property.[1] Defendants then removed the case to federal court under diversity jurisdiction. The parties filed cross-motions for summary judgment which focused on whether the defendants had complied with the proper mailing and notice requirements when sending the notice of default. In his response to defendants' motion, Muhammad also raised for the first time the argument that Indiana law, and not Tennessee law, applied to the dispute.

The district court granted defendants' motion and denied Muhammad's motion, dismissing his claims with prejudice. The court first conducted a choice-of-law analysis and concluded that Tennessee law governed the transaction. The court then applied Tennessee law, explaining that, when there is an irreconcilable conflict between the Note and the Deed, the language of the Note controls. Because the Deed provides for notice via *certified mail* but the Note allows for notice via *first-class mail*, the court concluded that the Note controls and first-class mail—the method used by defendants to communicate the notice of default—was proper.

Muhammad now appeals, arguing that the district court erred in both its choice-of-law analysis and its reading of the notice provisions.

II.

We begin with the choice-of-law issue. The district court's choice-of-law analysis and conclusion is reviewed de novo. *Performance Contracting Inc. v. DynaSteel Corp.*, 750 F.3d 608,

---

[1] Although other claims were initially brought by Muhammad, the district court dismissed them. Muhammad did not appeal their dismissal. Mackie Wolf was dismissed from the case entirely.

611 (6th Cir. 2014). A federal court sitting in diversity, as the district court did here, applies the choice-of-law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). As this case arises from the Western District of Tennessee, we apply the choice-of-law rules of Tennessee.

Tennessee abides by the Restatement (Second) of Conflict of Laws. *See Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992); *Wahl v. General Elec. Co.*, 786 F.3d 491, 494 (6th Cir. 2015). The Second Restatement approach supplies "default" rules but allows courts to disregard those defaults in favor of the state with the "most significant relationship" to the incident or contract. *See Hataway*, 830 S.W.2d at 59; *Goodwin Bros. Leasing, Inc. v. H&B Inc.*, 597 S.W.2d 303, 306-08 (Tenn. 1980); Restatement (Second) of Conflict of Laws §§ 6, 188(2) (1971).

In contract cases where the parties have selected a state's law to apply to their transaction, Tennessee will honor that choice-of-law provision "so long as the provision was executed in good faith, there is a material connection between the law and the transaction, and the chosen law is not contrary to the fundamental policies of Tennessee." *Town of Smyrna v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 645-46 (6th Cir. 2013); *see also Goodwin Bros.*, 597 S.W.2d at 306 n.2; *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 474-75 (Tenn. Ct. App. 2003) (citing *Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999)).

Here, a choice-of-law provision existed in the agreements between Muhammad and the defendants. The Note for the mortgage stated that it "shall be governed by and construed in accordance with . . . the laws of Indiana, to the extent Indiana laws are not preempted by federal laws or regulations, and without regard to conflict of law principles."[2] DE 65-3, Note, Page ID

---

[2] The Deed provided its own choice-of-law provision and selected "the laws of the jurisdiction in which the Property is located"—that is, Tennessee. DE 65-4, Deed, Page ID 599. However, as explained in Part III, *infra*, when there is an irreconcilable conflict between the Deed and the Note

594. Therefore, the law of Indiana should govern this wrongful foreclosure dispute unless an exception applies. In this case, the district court determined that Indiana had no substantial relationship to the parties or the transaction, and that Tennessee law should apply. We agree. While there is no indication of bad faith or subterfuge, the choice-of-law provision cannot be enforced because the mortgage holds no substantial relationship to Indiana.

Muhammad admits that the sole connection between the contract and Indiana is the fact that First Franklin was a subsidiary of the National City Bank of Indiana. The Deed was signed and notarized in Tennessee, the subject of the contract—the property—is in Tennessee, Muhammad resided in Tennessee at the time of contracting, and the Deed listed Fearnley and Califf Law Office of Shelby County, Tennessee, as the original trustee. While the address for First Franklin is initially listed in the Note as being in Indianapolis, the Note directed Muhammad to send regular payments to an address in Pittsburgh, overnight payments to an address in Louisville, and any privacy complaints to an address in Kalamazoo. The Deed further adds to the address book by directing any mail for First Franklin to an address in San Jose.

The existence of First Franklin's parent company in Indiana is not enough to create a material connection between the state and the transaction, as required by Tennessee law. In cases

---

in Tennessee, the Note controls. Regardless, application of Tennessee's choice-of-law rules to the Note's choice-of-law provision directs us to apply Tennessee law to the transaction. We believe that Tennessee courts would find that the Note's language directing Indiana law to apply "without regard to conflict of law principles" is not enforceable. Although the state has not expressed a view on the issue, it abides by the Second Restatement, which suggests that such policies are not enforceable because the conflicts law of a state does not serve only the interests of the parties and thus cannot be waived entirely by the parties. *See* Restatement (Second) of Conflict of Laws § 187 cmt. g ("Fulfillment of the parties' expectations is not the only value in contract law; regard must also be had for state interest and for state regulation."). Other states following the Second Restatement have taken a similar view. *See, e.g., Swanson v. Image Bank, Inc.*, 77 P.3d 439, 441-42 (Ariz. 2003) (finding an identical clause unenforceable); *DJR Assocs., LLC v. Hammonds*, 241 F. Supp. 3d 1208, 1222 n.3 (N.D. Ala. 2017) (same).

where a material connection has been found between a contractually-selected state and a contracting party residing in the selected state, we have required more evidence of connection. For example, evidence that the terms were negotiated from that state and the agreement was signed in that state has satisfied the material-connection requirement. *EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, 810 F. App'x 389, 400 (6th Cir. 2020). "The simple fact that [First Franklin's] parent company was founded in [Indiana] . . . and now operates . . . facilities there is simply not sufficient to show a logical connection to the transaction at issue in this case." *See Blackwell v. Sky High Sports Nashville Operations, LLC*, 523 S.W.3d 624, 633 (Tenn. Ct. App. 2017). While this distant relation to Indiana provides a connection to this transaction, it does not create a *material* connection.[3]

The district court correctly concluded that the mere fact of a parent company's existence in Indiana was insufficient to create a material connection between the state and the transaction. Therefore, the parties' choice of law provision should be disregarded, and Tennessee law applied.

III.

Applying Tennessee law, we address whether the district court properly granted summary judgment to the defendant institutions on Muhammad's wrongful foreclosure claim.

Muhammad claims that defendants' foreclosure on his property was wrongful because he did not receive notice of default or notice of intent to foreclose. Although defendants have

---

[3] Muhammad claims that Tennessee courts have previously held that a party's headquarters in a state is sufficient to create a "material connection." He bases this argument primarily on *Boswell v. RFD-TV the Theater, LLC*, 498 S.W.3d 550 (Tenn. Ct. App. 2016). However, the case specifically states that the court enforced the choice of law provision where the Theater's headquarters were located because "both parties agree that the choice of law clause is valid and enforceable." *Id.* at 556. Because *Boswell* does not involve a true analysis of whether headquarters can provide a material connection and other cases from the Tennessee courts provide a more thorough analysis and reach a different result, it does not control our decision.

produced evidence of these mailings to the property address, he argues that this evidence should have been excluded because it was not produced during discovery and thus Federal Rule of Civil Procedure 37 bars its consideration on a motion for summary judgment. He further argues that the evidence, even if considered, is inadequate because it shows that the mailings were sent via *first-class* mail (as required in the Note) and not by *certified* mail (as required in the Deed). He claims that the court improperly read these provisions in conflict when it could have read them harmoniously, as required by Tennessee law.

A.

We begin with Muhammad's discovery argument. This court "reviews decisions regarding discovery matters under an abuse of discretion standard." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (citation omitted). "An abuse of discretion occurs when the reviewing court is left with 'a definite and firm conviction that the court below committed a clear error of judgment.'" *Id.* (citation omitted).

There are four pieces of evidence upon which the district court relied in its summary judgment determination: the notice of default, the notice of acceleration, the notice of foreclosure sale, and an affidavit from SLS's assistant vice president, Nicholas J. Raab, verifying that these notices were mailed. The three notices were originally attached to defendants' earlier motion to dismiss, before discovery occurred. Of these mailings, the notice of acceleration and notice of foreclosure sale were stamped as being sent via first-class mail with tracking numbers, while the notice of default lacked any such markings. The Raab affidavit was first presented to the court at the summary judgment stage.

Muhammad asserts that none of this evidence should have been considered by the district court because none of it was disclosed in response to his interrogatories. However, this claim is

contradicted by the record with respect to the notices. The defendants' response to Muhammad's interrogatories indicates that the notice of default was provided during discovery and defendants explicitly stated that they intended to rely upon the other two notices at trial. These documents had already been provided to Muhammad during the motion-to-dismiss phase and were readily available and labeled on the district court's docket. If Muhammad had been unable to readily locate the information or was concerned that the specific documents had not been disclosed, the proper recourse would have been a motion to compel through Federal Rule of Procedure 37. *Cf. O'Donnell v. Genzyme Corp.*, 640 F. App'x 468, 476 (6th Cir. 2016) (rejecting argument that district court denied plaintiff the benefits of discovery because plaintiff failed to take "necessary corrective measures" including a motion to compel).

Muhammad finds particular error in the district court's failure to exclude the Raab affidavit as it was not disclosed during discovery. The district court excused defendants' failure to disclose the affidavit because it had not yet been created at the time of discovery. We find no error in this decision because of Muhammad's failures to act during the discovery process. Muhammad did not make an interrogatory request for the identities of individuals who might testify at trial, or pursue depositions or other discovery measures related to those individuals (like Raab), who could have been identified. Nor did he file a motion to compel discovery under Federal Rule of Civil Procedure 37 when defendants objected to his interrogatories. *Cf. O'Donnell*, 640 F. App'x at 476. Moreover, even if consideration of the Raab affidavit was in error, any error was harmless as the affidavit was not necessary for the court to properly conclude that the defendants were entitled to summary judgment. *See* Fed. R. Civ. P. 37(c).

B.

We review a district court's grant of summary judgment de novo. *Hurst v. Caliber Home Loans, Inc.*, 44 F.4th 418, 424 (6th Cir. 2022). Summary judgment is warranted only "when the evidence, taken in the light most favorable to the nonmoving party, establishes that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012)).

Tennessee requires foreclosing institutions to strictly comply with agreed-upon notice requirements. *Terry Case v. Wilmington Tr., N.A. as Tr. for Tr. MFRA 2014-2*, No. E2021-00378-COA-R3-CV, 2022 WL 2313548, at *8 (Tenn. Ct. App. June 28, 2022). And when considering the various documents associated with a property, "[t]he original note and the deed of trust . . . must be construed together to ascertain the intention of the parties." *Ferguson v. Peoples Nat'l Bank of LaFollette*, 800 S.W.2d 181, 183 (Tenn. 1990) (citations omitted). "Where, however, there is an irreconcilable difference between notes or bonds and mortgages or deeds of trust given to secure them, the former control." *Id.* (quoting 55 Am. Jur. 2d *Mortgages* § 176, at 303-04 (1971)); *see also Moore v. Progressive Sav. Bank*, 211 F.3d 1269, at *2 n.3 (6th Cir. 2000) (table) ("[A]lthough the deed of trust and the note must be construed together to ascertain the intention of the parties, the terms of the note control when an irreconcilable difference exists."). Here, we must construe the loan documents with respect to both *how* notice must be given and *what events* trigger the notice requirement.

We begin with how notice must be given. An irreconcilable conflict exists regarding the method of notice contained in the respective notice provisions of Muhammad's Deed and Note. The Deed states that: "Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering

it or by mailing such notice by *certified mail* addressed to Borrower at the Property Address[.]" DE 65-4, Deed of Trust, Page ID 599 (emphasis added). But the Note states that: "[E]xcept as otherwise required by law, we are authorized to mail any notice or other correspondence to you by *first class mail* to your last known address indicated on our records." DE 65-3, Note, Page ID 594 (emphasis added). Finding this to be an irreconcilable conflict, the district court concluded that the Note controlled and first-class mail was a permissible method of sending notices to Muhammad.

Muhammad, however, asserts that there is a way to read these provisions in harmony. He argues that the Note creates a general rule for notices to be sent via first-class mail, while the Deed creates a specific rule just for foreclosure notices to be sent via certified mail. Unfortunately, this argument has no basis in fact and is disproven by the text of the Deed itself, where multiple other provisions not related to default discuss abiding by the notice provision. Because the notice provisions are both general provisions and are irreconcilably in conflict, the text of the Note prevails, and first-class mail is required.

We next turn to which events trigger the duty of the lender or trustee to send notice via first-class mail. The Note contains no such duties; however, the Deed provides that notice shall be given to the borrower for an acceleration of the loan if default occurs and for any foreclosure sale that occurs. Neither the Deed nor the Note requires a notice of default to be given to the borrower.

Finally, we consider whether there is a genuine dispute of material fact as to whether the notices of acceleration and foreclosure sale were sent to Muhammad via first-class mail. No genuine dispute exists. The mailings in the record are stamped as first-class mail with tracking

numbers associated.[4] Muhammad has made a single attempt to create a genuine dispute of material fact as to these mailings by stating in his affidavit that he did not receive the notices. However, a mortgagee's "conclusory assertion" that he did not receive notice "is not sufficient to create a genuine dispute of material fact." *Conway v. E. Sav. Bank, FSB*, No. W2005-02919-COA-R3-CV, 2006 WL 3613605, at *6 (Tenn. Ct. App. Dec. 11, 2006); *see also Peoples v. Bank of Am.*, No. 11-2863-STA, 2012 WL 601777, at *5 (W.D. Tenn. Feb. 22, 2012). Moreover, testimony that Muhammad did not *receive* the notices does not create a genuine dispute of material fact as to whether the notices were *sent*. With no dispute of material fact as to whether the mailings were sent by the terms set out in the Note, summary judgment was properly granted to defendants.

IV.

For the foregoing reasons, we affirm.

---

[4] The district court attempted to further rely on the tracking results by *sua sponte* researching whether the mail had ever been delivered according to the United State Postal Service website. We believe this was partially in error. The United States Postal Service advises that records of tracking are only accurately available for a maximum of two years after the item was sent. *See* USPS Tracking – The Basics, https://faq.usps.com/s/article/USPS-Tracking-The-Basics (accessed March 20, 2023). At the time the district court accessed these tracking numbers, the number for the notice of acceleration was already more than two years old. According to the district court, USPS's website stated that the item had not been entered into the system. The tracking results were not in the record and the contents were subject to reasonable dispute, making it improper for this tracking to be the subject of judicial notice. *See* Fed. R. Evid. 201(b).

To the contrary, at the time the district court accessed the tracking number for the notice of foreclosure sale, it had been less than two years since the letter was sent. According to the district court, the USPS website advised that the item was sent, a postal employee attempted to deliver the document, left a note, and returned to the post office where the document went unclaimed. However, a current attempt to track the document (now outside the two-year window) says that the item has not been entered into the system. We are thus able to rely only on the district court's tracking results with respect to the notice of foreclosure sale.